UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Rosalee Dahlheimer, Jessica Onu, and Jessica Garcia, individually and on behalf of all others similarly situated, | Court File No. 18-cv-1906 (PJS/KMM) |
| Plaintiffs, | |
| v. | |
| Massage Retreat & Spa, Inc., and Lee Oberg, | |
| Defendants. | |

---

## FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

---

### STATEMENT OF CLAIM

Plaintiffs bring this collective and class action complaint on behalf of themselves individually and all others similarly situated to recover earned wages, gratuities, and commissions that Defendants failed to pay their employees.

### JURISDICTION AND VENUE

1.     This action arises under Minnesota common and statutory law, and the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"). Therefore, the Court has jurisdiction to hear this Complaint under 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Venue is proper in this district under 28 U.S.C. § 1391, as the acts and omissions giving rise to this action occurred in this district, and Defendants reside in this district.

## PARTIES

2.      Plaintiffs are adult residents of Minnesota. Plaintiffs were employed by Defendants as Estheticians/Skin Therapists. Plaintiff Dahlheimer worked for Defendants from in or around November 2016 until in or around February 2018. Plaintiff Onu worked for Defendants from in or around November 2016 until in or around January 2018. Plaintiff Garcia worked for Defendants from in or around April 2016 until in or around December 2016. During Plaintiffs' periods of employment, Defendants failed to pay them and their similarly situated coworkers for all of their hours worked, confiscated earned tips that belonged to Plaintiffs, and failed to pay them earned commissions.

3.      Defendant Massage Retreat & Spa, Inc. is a Minnesota entity that owns and operates a chain of stores in the Twin Cities that provide massage and spa services. According to the Minneapolis Secretary of State online database, Defendant Massage Retreat & Spa's principal place of business and registered office in the state of Minnesota is located at 4124 Quebec Avenue N #201, New Hope, Minnesota 55427.

4.      Defendant Lee Oberg is an adult resident of Minnesota. At all times relevant to this action Defendant Oberg was the founder, owner, CEO, corporate officer, and manager of Defendant Massage Retreat & Spa. At all times relevant to this action, Defendant Oberg had operational control over Massage Retreat & Spa. Accordingly, Defendant Oberg was Plaintiff's employer,

as that term is construed under the statutes implicated in this matter.[1] Defendant Oberg was actively involved in conceiving and implementing the employment practices at issue in this matter.

## FACTUAL ALLEGATIONS

5.    Plaintiffs and similarly situated individuals are employed, or have been employed within the relevant liability period, as Estheticians/Skin Therapists and/or Massage Therapists for Defendants.

6.    At all times relevant to this action, Defendants did not pay Plaintiffs and their similarly situated coworkers on a salary basis.

7.    At all times relevant to this action, Defendants paid Plaintiffs and their similarly situated coworkers on an hourly basis.

8.    Defendants agreed to pay Plaintiffs and similarly situated individuals an hourly wage for all hours worked for Defendants.

9.    Defendants agreed to pay Plaintiffs and similarly situated individuals a certain hourly wage for time spent providing direct services to

---

[1] *See Dole v. Elliott Travel & Tours*, 942 F.2d 962, 965-66 (6th Cir. 1991) (stating that "'[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'") (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)); *accord Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986); *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013); *Boucher v. Shaw*, 572 F.3d 1087, 1093-94 (9th Cir. 2009); *Rockney v. Blohorn*, 877 F.2d 637, 642-43 (8th Cir. 1989) (implicitly recognizing that the FLSA permits suits against employers in their individual capacities); *see also State by Humphrey v. Baillon Co.*, 503 N.W.2d 799, 804 (Minn. Ct. App. 1993) (finding that when a Minnesota statute is modeled on a federal statute—such as the MFLSA—critical terms in the state statute must be construed consistent with those of the federal statute).

clients (such as massages, facials, and waxes), and a certain hourly wage for time spent working when not providing direct services to clients.

10.    In Plaintiff Dahlheimer's case, Defendants agreed to pay her $16.50 per hour for time spent providing direct services to clients, and $10 per hour for time spent working when not providing direct services to clients, as reflected in a "Position Acceptance" form that Defendants required her to sign:

**Service Commission:  $4.13**/15 min. session, **$8.25**/30 min., **$16.50**/60 min., **$24.75**/90 min.
*Pay out: total of service commission, plus credit card tips and training OR $10 per hour worked in spa during assigned schedule, whichever is greater*

11.    Defendants required Plaintiff Dahlheimer's similarly situated coworkers—including Plaintiffs Onu and Garcia—to sign "Position Acceptance" forms virtually identical to the form that Plaintiff Dahlheimber signed.

12.    Defendants frequently failed to pay Plaintiffs and their similarly situated coworkers minimum wages for their time spent working for Defendants when not providing direct services to clients.

13.    In many instances, Defendants failed to pay Plaintiffs and their similarly situated coworkers *any* wages for their time spent working for Defendants when not providing direct services to clients.

14.    During the pay period from November 1, 2017 through November 15, 2017, for example, Plaintiff Dahlheimer worked 18 hours for Defendants, and Defendants did not pay her *any* wages for the 10.75 hours she spent working when not providing direct services to clients, as her paystub from this pay period reflects:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 16.6100 | 7.25 | 120.42 | 1,269.06 |
| Tips: Cc | | | 62.05 | 1,909.94 |
| Monthly Bonus | | | | 67.00 |
| Retail Commissi | | | | 674.23 |
| Service Comm | | | | 2,748.49 |
| Training | | | | 339.44 |
| **Gross Pay** | | | $182.47 | 7,355.63 |

15.   During the pay period from April 1, 2017 through April 15, 2017, for example, Plaintiff Dahlheimer worked 65 hours for Defendants, and Defendants did not pay her *any* wages for the 41 hours she spent working when not providing direct services to clients, as her paystub from this pay period reflects:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 16.6100 | 24.00 | 398.64 | 413.64 |
| Tips: Cc | | | 182.29 | 1,535.84 |
| Upgrades | | | 38.00 | |
| Monthly Bonus | | | | 67.00 |
| Retail Commissi | | | | 543.64 |
| Service Comm | | | | 2,748.49 |
| Training | | | | 245.00 |
| **Gross Pay** | | | $618.93 | 5,866.58 |

16.   Defendants' practice of not paying their employees any wages for work performed when not providing direct services to clients is memorialized in the Position Acceptance form:

*Pay out: total of service commission, plus credit card tips and training OR $10 per hour worked in spa during assigned schedule, whichever is greater*

17.    The work that Plaintiffs and their similarly situated coworkers performed for Defendants when not providing direct services to clients was compensable.[2]

18.    Defendants frequently confiscated tips that Plaintiffs and their similarly situated coworkers earned, and retained these amounts for themselves.

19.    During the pay period from October 1, 2017 through October 15, 2017, for example, Plaintiff Onu earned at least $27 in credit card tips, yet Defendants withheld these earned tips from her, as an Employee Tips printout that Defendants provided to her and her paystub from this pay period reflect:



**Employee Tips**
**From Sunday 10/1/2017 - 12:00:00 AM  To  Monday 10/23/2017 - 11:59:59 PM**
1:Entrance Computer , 2:Middle Computer , 3:Exit Computer
*10/23/2017*

| EMPLOYEE | INVOICE | CLIENT | TIP AMOUNT |
|---|---|---|---|
| JESSIE O:Jessie Onu<br>   Tips | | | |
| | 201710022214 | | $15.00 |
| | 201710092710 | | $12.00 |
| | 201710203511 | | $15.00 |
| | 201710203529 | | $10.00 |
| | 201710233756 | | $20.00 |
| | 201710233761 | | $20.00 |
| | | Tips | $92.00 |
| | | JESSIE O:Jessie Onu | $92.00 |
| | | Total: | $92.00 |

---

[2] *See* Minnesota Administrative Rule 5200.0120 (stating "[h]ours worked include…cleaning time, waiting time, or any other time when the employee must be either on the premises of the employer or involved in the performance of duties in connection with his or her employment or must remain on the premises until work is prepared or available.").

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. | 069 |
|-----|------|-------|-------|-----------|-----|
| Y6S | 021162 | SHO200 | | 0000420097 | 1 |

**Earnings Statement**

MASSAGE RETREAT & SPA INC
4124 QUEBEC AVENUE SUITE 201
NEW HOPE MN. 55427

| | |
|---|---|
| Period Beginning: | 10/01/2017 |
| Period Ending: | 10/15/2017 |
| Pay Date: | 10/20/2017 |

Taxable Marital Status:   Single
Exemptions/Allowances:
    Federal:        0
    MN:              0

00000000088
**JESSICA R ONU**
**3399 KENT STREET**
**#214**
**SHOREVIEW MN 55126**

| Earnings | rate | hours | this period | year to date | Other Benefits and Information | this period |
|----------|------|-------|-------------|--------------|--------------------------------|-------------|
| Regular | | | 320.00 | 2,948.02 | Hourly Rate | |
| Monthly Bonus | | | | 28.00 | | |
| Retail Commissi | | | | 340.40 | | |
| Service Comm | | | | 652.72 | | |
| Tips: Cc | | | | 1,077.64 | | |
| Training | | | | 710.50 | | |
| Gross Pay | | | $320.00 | 5,866.28 | | |

20.    Defendants' practice of confiscating and retaining their employees'

earned tips is memorialized in the Position Acceptance form:

*Pay out: total of service commission, plus credit card tips and training OR $10 per hour worked in spa during*
*assigned schedule, whichever is greater*

21.    Plaintiff Dahlheimer's customary schedule called for her to work 30

hours per week over five shifts, as the Position Acceptance form reflects:

**Employee Name:** Rosalee Dahlheimer
**Job Title:** Skin Therapist
**Department:** Skin Therapy
**Location:** Woodbury
**Reports to:** Skin Therapist Lead & Spa Management
**Hours per week: 30**
**Schedule Requirements: Minimum 4 Full weekend shifts per month**

22.    Defendants required Plaintiffs and their similarly situated

coworkers to arrive at work 30 minutes before their shifts began and start

7

working for Defendants' benefit, as a job description that Defendants required

Plaintiffs and their similarly situated coworkers to sign reflects:

**Essential Job Functions**
- Arrive 30 minutes before scheduled shift to prepare room, understand clients on their schedule for the day and ensure product knowledge appropriate to that client's skin type (as available).

23.    Defendants required Plaintiffs and their similarly situated

coworkers to stay at work up to 30 minutes after their shifts ended and

continue working for Defendants' benefit.

24.    Defendants did not pay Plaintiffs and their similarly situated

coworkers for the work they performed for Defendants before their shifts began

and after their shifts ended.

25.    The work that Plaintiffs and their similarly situated coworkers

performed for Defendants before their shifts began and ended was

compensable.[3]

26.    Defendants' employment practices, as detailed above, resulted in

Plaintiffs and their similarly situated coworkers frequently performing unpaid

work for Defendants.

27.    This unpaid work includes but is not limited to paperwork,

preparing for sessions with clients, getting hot towels ready, doing laundry,

cleaning, organizing the front desk, and conducting inventory.

28.    Defendants required Plaintiffs and their similarly situated

coworkers to remain on Massage Retreat & Spa's premises when they were not

---

[3] *Id.*

providing direct services to clients, unless Defendants assigned them to distribute fliers.

29.    Defendants frequently required Plaintiffs and their similarly situated coworkers to attend involuntary trainings and, in Plaintiff Garcia's case, to prepare involuntary trainings for Defendants' benefit.

30.    Under the Minnesota Fair Labor Standards Act, "hours worked include training time." Minnesota Administrative Rule 5200.0120.

31.    Under the Fair Labor Standards Act, hours worked includes involuntary attendance at trainings. *See* 29 C.F.R. § 785.27; U.S. Department of Labor Wage and Hour Division Fact Sheet #22, available at https://www.dol.gov/whd/regs/compliance/whdfs22.pdf.

32.    Defendants failed to pay Plaintiffs and their similarly situated coworkers wages for attending and preparing trainings.

33.    Defendants agreed to pay Plaintiffs and their similarly situated coworkers commissions at certain rates for retail products that Plaintiffs and their coworkers sold, as detailed in the Position Acceptance form:

**Product Commission:**    **10%** of product sales ($0-$999)
**15%** of product sales ($1000-$1999)
**20%** of product sales ($2000+)

34.    Defendants frequently failed to pay Plaintiffs and their similarly situated coworkers these commissions.

35.    During the pay period from June 1, 2017 through June 15, 2017, for example, Plaintiff Onu earned at least $44.72 in commissions, yet Defendants withheld this amount from her, as an Employee Commission Detail

printout that Defendants provided to her and her paystub from this pay period

reflect:

## Employee Commission Detail
### From Thursday 6/1/2017 To Monday 6/19/2017
*6/19/2017*



| Client | Invoice Number | Appt Type | Description | Service Hours | Quantity | Commission |
|---|---|---|---|---|---|---|
| **Onu, Jessie** | | | | | | |
| **Wages** | | | | | | |
| Hourly Wage | | | Hourly Wage: $8.00 | | | |
| Hours Worked | | | Actual Hours Worked: 42.00 | | | |
| Wages Paid | | | Hourly x Actual Hours = $336.00 | | | $336.00 |
| | | | **Total Wages** | | | **$336.00** |
| **Retail** | | | | | | |
| **6/2/2017** | | | | | | |
| | 201706022797 | RR | REDNESS RELIEF PRIMER SPF20 | | 1.00 | $4.22 * |
| | 201706022797 | RR | Multi-vitamin Hand & Nail Cream 2.5 Oz | | 1.00 | $2.29 * |
| | 201706022797 | RR | UltraCalming Serum Concentrate | | 1.00 | $5.10 * |
| | 201706022797 | RR | Ultracalming Cleanser 16 Oz | | 1.00 | $5.19 * |
| | 201706022797 | RR | Super Sensitive Shield SPF30 | | 1.00 | $4.58 * |
| | 201706022797 | RR | new sheer tint light | | 1.00 | $4.14 |
| | | | **Totals for 6/2/2017** | | **6.00** | **$25.52** |
| **6/9/2017** | | | | | | |
| | 201706093317 | NO | Phyto Replenish Oil | | 1.00 | $6.60 |
| | | | **Totals for 6/9/2017** | | **1.00** | **$6.60** |
| **6/13/2017** | | | | | | |
| | 201706133580 | NO | Body Hydrating Cream 16 Oz | | 1.00 | $2.60 * |
| | 201706133595 | RR | SkinPerfect Primer SPF 30 | | 1.00 | $2.75 * |
| | 201706133544 | RR | Daily Microfoliant 2.6 Oz | | 1.00 | $4.50 * |
| | | | **Totals for 6/13/2017** | | **3.00** | **$9.85** |
| **6/15/2017** | | | | | | |
| | 201706153772 | RE | Solar Defense Booster Spf50 1 Oz | | 1.00 | $2.75 * |
| | | | **Totals for 6/15/2017** | | **1.00** | **$2.75** |
| | | | **Total Retail** | | **11.00** | **$44.72** |

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. | 069 |
|---|---|---|---|---|---|
| Y6S | 021162 | SHO200 | | 0000250100 | 1 |

**Earnings Statement**

MASSAGE RETREAT & SPA INC
4124 QUEBEC AVENUE SUITE 201
NEW HOPE  MN. 55427

Period Beginning:    06/01/2017
Period Ending:       06/15/2017
Pay Date:            06/22/2017

00000000091
**JESSICA R ONU**
**3399 KENT STREET**
**#214**
**SHOREVIEW MN 55126**

Taxable Marital Status:    Single
Exemptions/Allowances:
      Federal:        0
      MN:             0

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 17.0300 | 12.75 | 217.13 | 1,206.00 |
| Tips: Cc | | | 120.00 | 545.65 |
| Training | | | 95.00 | 445.50 |
| Upgrades | | | 2.50 | |
| Monthly Bonus | | | | 18.00 |
| Retail Commissi | | | | 125.94 |
| Service Comm | | | | 652.72 |
| **Gross Pay** | | | **$434.63** | **3,064.31** |

Other Benefits and
Information              this period
Hourly Rate

Important Notes
YOUR HOURLY RATE HAS BEEN CHANG
17.0300.

36.    Plaintiffs spoke with many former and current similarly situated coworkers who confirmed that Defendants were not properly paying them for all of their time spent working for Defendants, that Defendants confiscated their earned tips, and that Defendants failed to pay commissions.

37.    The majority if not all of the persons subjected to Defendants' illegal employment practices described above are women.

## CLASS ACTION ALLEGATIONS

38.    Plaintiffs bring this action on behalf of themselves and on behalf of all individuals similarly situated. The proposed class is defined as follows: all persons who have worked for Defendants as Estheticians/Skin Therapists and/or Massage Therapists during the relevant liability period.

39.    This action is maintainable as a class action under Minnesota Rule of Civil Procedure 23.01 because the class is so numerous that joinder of all

members is impracticable, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interest of the class.

40.    This action is also properly maintainable as a class action under Minnesota Rule of Civil Procedure 23.02 because questions of law or facts common to members of the class predominate over any questions affecting only individual members, and because the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

41.    The members of the class identified above are so numerous that joinder of all members is impracticable.  The exact number of the class is unknown, but it will be comprised of more than 40 class members.  The exact number may be determined from records maintained by Defendants.

42.    There are numerous and substantial questions of law and fact common to all of the members of the Class, including but not limited to the following:

      a.  Whether Defendants violated state and federal law by failing to properly pay Plaintiffs and class members for all hours worked;

      b.  Whether Defendants violated state and federal law by confiscating and retaining Plaintiffs' and class members' earned tips;

      c.  Whether Defendants violated state and federal law by failing to pay Plaintiffs' and class members' earned commissions.

      d.  Whether Defendants' conduct is in willful violation of the law.

43.    Defendants are expected to raise common defenses to this class action, including denial that their actions violated the law.

44.    The Named Plaintiffs will fairly and adequately protect the interests of the Class and they have retained counsel experienced and competent in the prosecution of complex class action litigation.

45.    The claims of the Named Plaintiffs are typical of the claims of the Class.  The Named Plaintiffs have the same interest and suffer from the same injuries as the class members.  The Named Plaintiffs and the class the Named Plaintiffs seek to represent were not paid wages for all hours worked, Defendants confiscated and retained their earned tips, and Defendants failed to pay earned commissions.

46.    Upon information and belief, no other member of the class has an interest in individually controlling the prosecution of his/her claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer.  However, if any such class member should become known, he or she may "opt out" of this action upon receipt of the class action notice pursuant to the Minnesota Rule of Civil Procedure, Rule 23.03.

47.    Plaintiffs are unaware of any other litigation concerning this controversy commenced by or for other class members.

48.    Litigation should be concentrated in this forum because most of the class members are or were employed by Defendants within this forum.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT MINIMUM WAGE REQUIREMENT

49.    Plaintiffs and similarly situated individuals re-allege and incorporate all of the above paragraphs as though fully stated herein.

50.    Plaintiffs and similarly situated individuals are similarly situated within the meaning of the FLSA, 29 U.S.C. § 216(b).

51.    Plaintiffs and similarly situated individuals have given their consent to become parties to this lawsuit against Defendants as required by 29 U.S.C. § 216(b).  (*See* Exhibit A, attached.)

52.    Plaintiffs and similarly situated individuals are employed, or have been employed, by Defendants during the past three years in an enterprise engaged in commerce, as these terms are used in §§ 206 and 207 of the FLSA, 29 U.S.C §§ 206-07.

53.    The FLSA, 29 U.S.C. § 206, requires employers to pay employees a minimum wage for all hours worked.

54.    The FLSA, 29 U.S.C. § 216(b), makes employers who violate § 206 liable to the affected employees in the amount of the employees' unpaid wages, liquidated damages, costs, and attorney's fees.

55.    Defendants violated the minimum wage requirements of the FLSA by regularly and repeatedly failing to compensate Plaintiffs and similarly situated individuals for their time spent on the work activities described in this Complaint.

56.    Defendants failed to provide Plaintiffs and similarly situated individuals with advance notice that they were taking a tip credit toward their minimum wage obligations.[4]

57.    Defendants knew, or showed reckless disregard for, the fact that they violated the FLSA by failing to pay Plaintiffs and similarly situated individuals minimum wages for the work activities described in this Complaint.

58.    These violations occurred within the statutory period prescribed by 29 U.S.C. § 255(a).

59.    Plaintiffs and similarly situated individuals suffered damages as a result of Defendants' violations of the FLSA.

**COUNT II**
**VIOLATION OF THE MINNESOTA FAIR LABOR STANDARDS ACT MINIMUM WAGE REQUIREMENT**

60.    Plaintiffs and class members re-allege and incorporate all of the above paragraphs as though fully stated herein.

61.    Defendants have been "large employers," as that term is defined under the Minnesota FLSA, at all times relevant to this action.

62.    Plaintiffs are members of a class that meets the requirements set forth in the Minnesota Rules of Civil Procedure, Rule 23, for certification and maintenance of a class action.

63.    The Minnesota FLSA, Minn. Stat. § 177.24, requires employers to pay minimum wages for all hours worked.

_____

[4] *See* 29 C.F.R. § 531.59(b).

64.     The Minnesota FLSA, Minn. Stat. § 177.27, makes employers who violate § 177.24 liable to the affected employees in the amount of unpaid wages, costs, attorneys' fees, and other appropriate relief under the law.

65.     Defendants are the "employers" and Plaintiffs and class members are the "employees" for purposes of the Minnesota FLSA.

66.     Defendants violated the Minnesota FLSA by regularly and repeatedly failing to compensate Plaintiffs and class members for the time spent on the work activities described in this Complaint.

67.     Defendants were not entitled to take a tip credit towards their minimum wage obligations under the Minnesota FLSA.[5]

68.     Defendants knew, or showed reckless disregard for, the fact that they violated the Minnesota FLSA by failing to pay Plaintiffs and class members for the work activities described in this Complaint.

69.     These violations occurred within the statutory period prescribed by Minn. Stat. § 541.07.

### COUNT III
### VIOLATION OF THE MINNESOTA FAIR LABOR STANDARDS ACT
### TIP SHARING PROHIBITION

70.     Plaintiffs and class members re-allege and incorporate all of the above paragraphs as though fully stated herein.

71.     Under the Minnesota FLSA, Minn. Stat. § 177.24, subd. 3, "any gratuity received by an employee or deposited in or about a place of business for personal services rendered by an employee is the sole property of the employee.

---

[5] Minn. Stat. § 177.24, subd. 2.

No employer may require an employee to contribute or share a gratuity received by the employee with the employer."

72.     The Minnesota FLSA, Minn. Stat. § 177.24, subd. 3, makes it illegal for employers to participate in a tip-sharing scheme.

73.     The Minnesota FLSA, Minn. Stat. § 177.24, subd. 3, makes it illegal for employers to confiscate and retain employees' tips, or to require employees to share tips with an employer.

74.     Defendants' conduct, as detailed above, violated Minn. Stat. § 177.24, subd. 3.

75.     Plaintiffs and class members suffered harm and damages as a result of Defendants' violations of Minn. Stat. § 177.24, subd. 3.

**COUNT IV**
**VIOLATION OF THE MINNESOTA FAIR LABOR STANDARDS ACT**
**RECORDKEEPING REQUIREMENT**

76.     Plaintiffs and class members re-allege the foregoing paragraphs of the Complaint as though fully stated herein.

77.     Minn. Stat. § 177.30 requires employers subject to the Minnesota FLSA to make and keep a record of the hours worked each day and each work week by their employees.  Employers who violate this section may be subject to a fine of $1,000.00 per violation and may also be subject to the penalties listed under Minn. Stat. § 177.32, subd. 1.

78.     Defendants violated Minn. Stat. § 177.30 by failing to make and keep records of the time Plaintiffs and class members spend/spent working for Defendants.

79.    Plaintiffs and class members suffer or have suffered as a result of Defendants' violations of Minn. Stat. § 177.30.

**COUNT V**
**VIOLATION OF THE MINNESOTA PAYMENT OF WAGES ACT**
**Minn. Stat. §§ 181.101, 181.13, 181.14, and Minn. Rule 5200.0120,**
**Subpart 1**

80.    Plaintiffs re-allege and incorporate all of the above paragraphs as though fully stated herein.

81.    Defendants agreed to pay Plaintiffs and similarly situated individuals an hourly wage for all hours worked for Defendants, to pay earned gratuities, and to pay commissions at a certain rate.

82.    The Minnesota Payment of Wages Act requires employers to pay for all straight time worked, all earned gratuities, and all commissions earned.

83.    Defendants violated the Minnesota Payment of Wages Act and Minn. Rule 5200.0120 by failing to compensate Plaintiffs and class members for all straight time worked, all gratuities earned, and all commissions earned.

84.    Defendants knew, or showed reckless disregard for, the fact that they violated the Minnesota Payment of Wages Act and Minn. Rule 5200.0120 by failing to pay Plaintiffs and class members for all straight time worked, all gratuities earned, and all commissions earned.

85.    These violations occurred within the statutory period prescribed by the Minnesota Payment of Wages Act and/or Minn. Rule 5200.0120.

## COUNT VI
## BREACH OF CONTRACT

86.    Plaintiffs and class members re-allege and incorporate all of the above paragraphs as though fully stated herein.

87.    Defendants entered into an employment contract, express or implied, with Plaintiffs and class members, under which Plaintiffs and class members were to be paid for all hours worked for the benefit of Defendants, and commissions at certain rates.

88.    Defendants breached this contract.

89.    As a result, Plaintiffs and class members suffered economic damages.

## COUNT VII
## UNJUST ENRICHMENT / QUANTUM MERUIT

90.    Plaintiffs and class members re-allege and incorporate all of the above paragraphs as though fully stated herein.

91.    The performance of the activities described in the Complaint conveyed and continues to convey a benefit to Defendants, which Defendants have knowingly received.

92.    Defendants are not entitled to this benefit, and retaining it without paying for it would be unjust to Plaintiffs and class members.

93.    Consequently, Plaintiffs and class members are entitled to recover the reasonable value of the benefit conveyed to Defendants by the performance of the activities described in this Complaint.

## COUNT VIII
## CIVIL LIABILITY FOR THEFT
## MINN. STAT. § 604.14

94.    Plaintiffs and class members re-allege and incorporate all of the above paragraphs as though fully stated herein.

95.    The wages, gratuities, and commissions earned by Plaintiffs and their similarly situated coworkers were the personal property of Plaintiffs and their coworkers.

96.    Defendants, either directly or through aiding and abetting, confiscated and retained Plaintiffs' and their similarly situated coworkers' earned wages, gratuities, and commissions without consent.

97.    Defendants had no intention of returning the confiscated wages, gratuities, and commissions to Plaintiffs and their similarly situated coworkers.

98.    Defendants have not returned to Plaintiffs and their similarly situated coworkers the wages, gratuities, and commissions that Defendants confiscated and retained.

99.    As a result, Plaintiffs and their similarly situated coworkers have suffered harm and are entitled to damages.

## JURY DEMAND

100.   Plaintiffs and class members demand a jury trial.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the class, request relief as follows:

1.   Certification of this case as a class and collective action;

2.   Designation of Plaintiffs as representatives of the class and Plaintiffs' counsel as Class Counsel;

3.   A finding that, during the relevant liability period, Defendants are liable to Plaintiffs and class members for failing to pay wages for time Plaintiffs and class members spent working for Defendants, for confiscating gratuities that belonged to Plaintiffs and class members, and for failing to pay Plaintiffs' and class members' earned commissions;

4.   Judgment against Defendants for an amount equal to Plaintiffs' and class members' unpaid wages and gratuities and an equal amount of liquidated damages, at the applicable wage rate (or prejudgment interest, if liquidated damages are not awarded);

5.   Pre- and post-judgment interest on all damages and other relief awarded herein;

6.   Leave to add additional Plaintiffs;

7.   The reasonable value of the services performed for, or the benefit conveyed to, Defendants as described in this Complaint;

8.   Costs and attorneys' fees to the extent allowed by law;

9.    Grant Plaintiffs and class members all other statutory relief to which they are entitled;

10.   Punitive damages;

11.   Grant Plaintiffs leave to amend the complaint to include a claim for punitive damages;

12.   Grant Plaintiffs leave to amend the Complaint if the Court finds this pleading deficient in any way; and

13.   Such further relief as the Court deems equitable and just.


Dated:  July 23, 2018                              _s/Joshua R. Williams_
                                                   Joshua R. Williams (#389118)
                                                   jwilliams@jrwilliamslaw.com
                                                   2836 Lyndale Avenue S, Suite 160
                                                   Minneapolis, Minnesota 55408
                                                   (612) 486-5540
                                                   (612) 605-1944 Fax

                                                   **ATTORNEY FOR PLAINTIFFS**